# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

TRANSCENDENT MARKETING &
DEVELOPMENT, LLC,

    Plaintiff,

    v.

C AND C PROPERTY INVESTMENTS,
LLC, CORY GALLOWAY,
individually and d/b/a C AND C
PROPERTY INVESTMENTS, and
CHARLES MARSHALL, individually
and d/b/a C AND C PROPERTY
INVESTMENTS,

    Defendants.

4:23-CV-318

## ORDER

Before the Court are motions for default judgment, dkt. nos. 32, 55, 61, as well as related motions for attorneys' fees and prejudgment interest, dkt. nos. 62, 63, filed by Plaintiff Transcendent Marketing & Development, LLC. The Court heard argument on the motions on June 11, 2024, and February 7, 2025. Dkt. Nos. 41, 64. For the reasons set forth below, the Court **GRANTS** Plaintiff's motions for default judgment, **GRANTS in part** Plaintiff's motion for prejudgment interest, and **DEFERS** ruling on Plaintiff's motion for attorneys' fees.

## BACKGROUND

This case arises from an agreement ("the Agreement") between

Plaintiff, a real estate marketing and development company, and Defendant C and C Property Investments ("C and C") to market real property in a subdivision called Liberty Harbor. Dkt. No. 19 ¶¶ 7, 9. Defendant Charles Marshall is the Owner of C and C. See id. at 19. Defendant Cory Galloway is a Managing Member of C and C. Id.

The Agreement stated that Defendant C and C was "the owner or receiver of an option to purchase" the Liberty Harbor property. Id. at 13. Defendant C and C guaranteed that the ability of the property to be sold in the Agreement. Id. The Agreement required Plaintiff to market the property to potential buyers, prepare the property to be sold, and hold an "Event Sale" for those potential buyers. Id. at 13-17.[1]

This Event Sale was set for March 11, 2023. Id. at 17. Just a few days before, Plaintiff discovered that Defendants neither owned nor had a right to sell the Liberty Harbor property when Plaintiff received a cease-and-desist letter from the rightful

---

[1] The Agreement contemplated that Plaintiff would front the costs for the Event Sale. Dkt. No 19 at 14-16. The market costs included, but were not limited to "graphics design, paper, print, postage, and drop shipping of a direct mail brochure, purchase and processing of records/lead list, web design, email blast, email coding, Facebook marketing, in-house postage print and paper products." Id. at 15. The event costs included, but were not limited to tent rental, radio rental, signage, travel, lodging, "Port-o-John rental", even insurance, shirts, printed contracts and tour booklets, catering, and police officers to direct traffic. Id. Lastly, property improvement expenses include the cost of "bushhogging, mowing, weedeating, tree cutting, debris removal, fresh plant[s], and lot surveying." Id. at 16.

property owners. Id. ¶ 14. Plaintiff alleges that Defendants knew they had no authority to sell the property. Id. ¶ 19.

Naturally, the Event Sale was cancelled. Id. ¶ 16. As a result, Plaintiff alleges that it incurred losses in the amount of approximately $450,000. Dkt. No 64, Ex. 3. Plaintiff brought this action for breach of contract (Count I), misrepresentation (Count II), violation of the Tennessee Consumer Protection Act ("TCPA") (Count III),[2] and attorneys' fees and costs (Count V). Dkt. No. 19. Defendant C and C was personally served with service of process through its registered agent, Defendant Marshall, on February 9, 2024. Dkt. No. 24. Defendant Marshall was personally served with service of process via the U.S. Marshals Service on April 8, 2024. Dkt. Nos. 31-1, 35. Defendant Galloway was served by publication, with the Court's permission. Dkt. No. 59; see also Fed. R. Civ. P. 4(e)(1); O.C.G.A. § 9-11-4(f)(1)(A). None of the Defendants have filed an answer or any responsive pleading within the time allowed by law.

On April 26, 2024, Plaintiff moved for default judgment as to Defendant C and C, and the Court heard argument on June 11, 2024. Dkt. Nos. 32, 41. On November 7, 2024, Plaintiff moved for default judgment as to Defendant Marshall. Dkt. No. 55. On January 31,

---

[2] In the alternative, Plaintiff pleads a violation of Georgia's Fair Business Practices. Act, O.C.G.A. § 10-1-390 et seq. Dkt. No. 19 ¶ 42; see infra Section II.A (The Court holds Tennessee law governs the substantive causes of action).

2025, Plaintiff moved for default judgment as to Defendant Galloway. Dkt. No. 61. The Court heard argument on February 7, 2025. Dkt. No. 64.

**LEGAL STANDARD**

When a defendant fails to file an answer or otherwise defend, a court may enter judgment by default. Fed. R. Civ. P. 55(b)(2). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Prior to entering default judgment, the Court must investigate the legal sufficiency of the complaint's allegations. Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988). "[A] default judgment cannot stand on a complaint that fails to state a claim." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Surtain, 789 F.3d at 1245 (citation omitted).

Accordingly, the Court must determine "whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (alterations adopted) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "The entry of a default judgment

is committed to the discretion of the district court." <u>Hamm v. DeKalb Cnty.</u>, 774 F.2d 1567, 1576 (11th Cir. 1985) (citations omitted).

Plaintiff attached several exhibits to its complaint in support of its claims. Dkt. No. 19. In accordance with Federal Rule of Civil Procedure 10(c), the Court considers these exhibits as part of the pleading. Fed. R. Civ. P. 10(c). Plaintiff also attached exhibits to the motions for default judgment. Dkt. Nos. 32-1, 32-2. The Court considers these as well. <u>Frazier v. Absolute Collection Serv.</u>, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2010) ("Besides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration" on default judgment.); <u>Nelson v. Atl. Glob. Fin., Inc.</u>, 725 F. Supp. 3d 1288, 1292 n.1 (M.D. Ala. 2024) ("So long as the documents are (1) central to the plaintiff's claim and (2) undisputed, meaning the authenticity of the documents are not challenged, the Court can rely on the exhibits" attached to the motion for default judgment. (alterations adopted)).

## DISCUSSION

Plaintiff's motions for default judgment are **GRANTED** because jurisdiction is proper in this Court, the amended complaint properly states a TCPA claim against Defendants, and there is a legitimate basis for damages.

I.    **Jurisdiction & Venue Are Proper**.

Personal jurisdiction is proper in this case. The Court must conduct a two-part inquiry to determine whether it may exercise specific personal jurisdiction. Del Valle v. Trivago GMBH, 56 F.4th 1265, 1272 (11th Cir. 2022). First, the long-arm statute of the state in which the court sits must authorize it to exercise specific jurisdiction in the case. Id. Second, the court's exercise of specific jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. Id.

**A. Georgia's Long-Arm Statute**

The Court first decides whether sufficient facts are alleged to subject Defendants C and C, Marshall, and Galloway to Georgia's long-arm statute. The forum's state law controls whether that state's long-arm statute reaches the controversy in question. Abramson v. Walt Disney World Co., 132 F. App'x 273, 275 (11th Cir. 2005); Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

Georgia's long-arm statute authorizes a court to exercise jurisdiction over a nonresident-defendant who (1) "[t]ransacts any business within this state," (2) "[c]ommits a tortious act or omission within this state," or (3) "owns, uses, or possesses any real property situated within this state" if the cause of action arises out of the ownership, use, or possession of that property. O.C.G.A. § 9-10-91(1-2),(4).    Defendants    are    not    Georgia

residents.[3] Defendants' conduct nevertheless satisfies these provisions of the Georgia long-arm statute and brings them within the Court's jurisdictional reach under Georgia law.

To satisfy the first subsection, the nonresident defendant must have "purposefully done some act or consummated some transaction in this state." Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 736-37 (Ga. Ct. App. 2006). However, "nothing in subsection (1) requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State." Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005). By executing the Agreement, Defendants C and C, Marshall and Galloway purposefully consummated a transaction involving Georgia real estate. See Dkt. No. 19 at 19 (signature page with all Defendants' signatures). Plaintiff's services under the Agreement were to be performed in Georgia at the Event Sale. Dkt. No. 19 at 13. The negotiations and site visits, which Defendants attended, occurred in Georgia. Dkt. No. 32-2 ¶¶ 4-5.

Under the second subsection, Georgia courts have further held that an allegation that defendants concealed a defect in a real

---

[3] According to the amended complaint, Defendants Marshall and Galloway are South Carolina citizens. Dkt. No. 19 ¶¶ 2-3. C and C Property is a South Carolina limited liability company. Id. ¶ 4. Plaintiff now posits that Defendant Galloway is a citizen of Illinois. Dkt. No. 61 at 6.

estate transaction "alone is sufficient to sustain jurisdiction under subsection (2) of the Georgia Long Arm Statute." <u>Edelschick v. Blanchard</u>, 339 S.E.2d 628, 630 (Ga. Ct. App. 1985). Courts have also held misconduct in a transaction related to real property falls under the fourth subsection. <u>Donald Who, LLC v. Vines</u>, No. 1:17-CV-291, 2018 WL 4839787, at *3-4 (N.D. Ga. July 16, 2018) (applying O.C.G.A. § 9-10-91(4) where the defendants executed and recorded inaccurate legal documents conveying property located in Georgia, and the dispute arises out of the inaccuracies in those legal documents); <u>see also</u> <u>Hart v. DeLowe Partners, Ltd.</u>, 250 S.E.2d 169, 170 (Ga. Ct. App. 1978); <u>Moore v. Lindsey</u>, 662 F.2d 354, 358-59 (5th Cir. Unit B 1981) (Historically, "Georgia courts have not held that the long arm statute extends solely to the holder of legal title. . . .").[4] Therefore, by executing the Agreement and purporting to be "the owner or receiver of an option to purchase . . . real property" located in Georgia, Defendants purposefully brought themselves within the jurisdiction of Georgia. Dkt. No. 19 at 13. Their allegedly tortious conduct in a transaction related to Georgia property satisfies the Georgia long-arm statute. <u>See</u> O.C.G.A. § 9-10-91(1-2),(4).

**B. Due Process**

Second, the Fourteenth Amendment Due Process clause "requires

---

[4] "Unit B panel decisions are binding on the Eleventh Circuit." <u>United States v. Moore</u>, 115 F.4th 1370, 1375 n.6 (11th Cir. 2024).

that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A defendant has minimum contacts for the purposes of specific jurisdiction if (1) the contacts relate to the plaintiff's cause of action or have given rise to it, (2) the contacts "involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws," and (3) "the defendant's contacts with the forum [are] such that the defendant should reasonably anticipate being haled into court there." S.E.C. v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997) (alterations adopted) (citation omitted).

First, Defendants' contacts—the Agreement concerning Georgia property—relate to Plaintiff's cause of action because the breach of that Agreement, and the representations within, give rise to the cause of action. See generally Dkt. No. 19. Plaintiff and Defendants conducted site visits to the Georgia property during the negotiation and execution of the Agreement, and Defendants represented a Georgia property interest in the negotiation and execution of the Agreement. See Dkt. No. 32-2 ¶¶ 4-5.

Second, Defendants purposefully availed themselves of the

privileges of conducting activities in Georgia. While the
Agreement involved activities—the Event Sale—taking place in
Georgia, the Court notes that Defendants did not choose Georgia
law to govern the Agreement's disputes. Dkt. No. 19 at 18 (The
Agreement contains a choice-of-law provision designating Tennessee
as the governing state law.). "While not dispositive, a choice-
of-law provision is a relevant factor in determining whether the
parties have purposefully invoked the benefits and protections of
a state's laws." N. Am. Elecs. Components, LLC v. Smart Packaging
Sols., ZI, No. 12-cv-81, 2013 WL 12291503, at *7 (N.D. Ga. Feb.
19, 2013) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462,
477 (1985)). This non-dispositive factor does not outweigh that
Defendants allegedly misrepresented their interest in Georgia real
property and purposefully availed themselves of Plaintiff's
services to occur in Georgia at the Event Sale. See Dkt. No. 19 at
13. For example, in the Agreement, Defendants are "responsible for
obtaining all local, state, and federal permitting related to the
sale of the Property." Id. Obtaining such local and state
permitting involves conducting activities within Georgia and
invoking the benefits and protections of its local and state laws.
See Burger King, 471 U.S. at 482. Notwithstanding the choice-of-
law provision, Defendants' attempted involvement with the Liberty
Harbor property indicates a "deliberate affiliation" with Georgia
or "the reasonable foreseeability of possible litigation" here.

10

See id.

Lastly, Defendants should have reasonably anticipated being haled into Georgia court by organizing the fraudulent Event Sale in Georgia. Dkt. No. 19 at 13. Defendants' representations regarding the Liberty Harbor property and the attempt to hold the Event Sale manifest "the reasonable foreseeability of possible litigation" in Georgia. Burger King, 471 U.S. at 482. Unsurprisingly, Georgia courts have not hesitated to find minimum contacts where nonresident defendants misrepresented a fact or fraudulently conducted transactions involving Georgia real estate. See, e.g., Forrister v. Manis Lumber Co., 501 S.E.2d 606, 609 (Ga. Ct. App. 1998) (concluding the minimum contacts requirement was satisfied in an *in rem* action involving the fraudulent conveyance of Georgia property owned by a nonresident-defendant); Regante v. Reliable-Triple Cee of N. Jersey, Inc., 308 S.E.2d 372, 373 (Ga. 1983) (concluding the minimum contacts requirement was satisfied where a non-resident defendant executed an invalid assignment); Edelschick, 339 S.E.2d at 631 (concluding jurisdiction was constitutional where the claim related to a Georgia real property transaction in which nonresident-defendants intentionally or fraudulently concealed an alleged defect); Hart, 210 S.E.2d at 171 (concluding jurisdiction was constitutional where nonresident-defendants executed a promissory note and deed central to a Georgia real estate transaction). Thus, the minimum contacts requirement

is satisfied.

Finally, because Defendants have minimum contacts, the Court decides whether the exercise of jurisdiction offends traditional notions of fair play and substantial justice by examining "the burden on the defendant, the interests of the forum, and the plaintiff's interest in obtaining relief." Carrillo, 115 F.3d at 1547 (alterations adopted) (citation omitted). Because Defendants contracted to conduct an Event Sale in Georgia, there is no indication that it is burdensome for Defendants to be haled into court in Georgia. See also Donald Who, LLC, 2018 WL 4839787, at *5 (considering that "despite having been served, [Defendants] have not made any appearance in the lawsuit, not even to contest jurisdiction" to hold that the litigation would not burden defendants). Further, there is "no doubt that Georgia has a strong interest in applying its land laws to disputes involving Georgia real property" or real property interests. See id. (citing Paxton v. Citizens Bank & Tr. of W. Ga., 704 S.E.2d 215, 221 (Ga. Ct. App. 2010)). Lastly, Plaintiff has an interest in obtaining relief because the amended complaint alleges the Event Sale was cancelled just days prior to its scheduled occurrence, and, consequently, Plaintiff expended resources that could not be recouped. Dkt. No. 19 ¶ 14. Therefore, the Court's exercise of personal jurisdiction is proper.

**C. Venue**

Venue within the Southern District of Georgia is proper under 28 U.S.C. § 1391(b)(2) because the Liberty Harbor property is in Glynn County in the Southern District. Dkt. No. 55 at 2 n.2.[5]

**D. Subject Matter Jurisdiction**

Subject matter jurisdiction is proper based on diversity. 28 U.S.C. § 1332. Diversity jurisdiction requires (1) diversity of citizenship and (2) the amount in controversy to exceed $75,000. Id. Defendant Marshall is a South Carolina citizen; Defendant C and C is a South Carolina limited liability company. Dkt. No. 19 ¶¶ 2, 4. Plaintiff purports that Defendant Galloway is a citizen of Illinois. Dkt. No. 61 at 6. Plaintiff is a Tennessee limited liability corporation. Dkt. No. 19 ¶ 1. Therefore, there is diversity of citizenship.

According to the amended complaint, Plaintiff sustained damages of approximately $600,000. Id. ¶ 18. Plaintiff further submits an affidavit from its owner and single-member manager, swearing that Plaintiff incurred losses of approximately $450,000 due the Event Sale's cancellation. Dkt. Nos. 32-2 ¶ 14, 64. This included costs for marketing the property, cosmetic work to the property, and compensation for vendors and employees. Dkt. Nos. 19

---

[5] The Agreement incorrectly states the property is located in Liberty County. Dkt. No. 19 at 13. Nevertheless, Liberty County is also in the Southern District of Georgia.

¶ 13 (Marketing expenses include "e-mail designs, mailing, signs, shirts contracts, food, tents, travel and other expenses."), 32-2 ¶ 15. This amount exceeds the $75,000 jurisdictional requirement.

**II. The Amended Complaint Sufficiently Supports Default Judgment.**

The Court holds that default judgment shall be entered against Defendants because Plaintiff's amended complaint states a legally sufficient substantive cause of action and asserts a legitimate basis for relief against Defendants.

**A. The Agreement's Choice-of-Law Provision is Enforceable.**

The Agreement contains a choice-of-law clause, providing:

> It is the intention of the parties hereto that all questions with respect to the construction and interpretation of this Agreement and the rights and liabilities of the parties hereunder shall be determined in accordance with the laws of the State of Tennessee.

Dkt. No. 19 at 18. "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state." Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996). Under Georgia law, "the law of the jurisdiction chosen by parties to a contract to govern their contractual rights will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., 659 S.E.2d 359, 361 (Ga. 2008). A court should not enforce a choice-of-law provision if (1) the foreign jurisdiction's law is "so radically dissimilar to

14

anything existing in our own system of jurisprudence that it would seriously contravene the policy embodied in Georgia law" or if (2) the type of contract is enforceable in the foreign jurisdiction but illegal in Georgia—for example, restrictive covenants or wagering contracts. Motorsports of Conyers, LLC v. Burbach, 892 S.E.2d 719, 723 (Ga. 2023) (internal quotation marks and citation omitted); see also O.C.G.A. § 13-8-2(a) (enumerating by statute contracts contravening Georgia public policy).

In this case, the elements to prove a TCPA violation are similar to those for a Georgia Fair Business Practices Act claim; both require an unfair or deceptive business act or practice, causation, and damages. Compare Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) with Henry v. Griffin Chrysler Dodge Jeep Ram, 868 S.E.2d 827, 830 (Ga. Ct. App. 2022). Further, the Agreement is not a contract prohibited by statute. O.C.G.A. § 13-8-2(a). Therefore, there is no indication that enforcing the Agreement's choice-of-law provision "would seriously contravene the policy embodied in Georgia law" or enforce a contract that is illegal and void under Georgia law. See Motorsports of Conyers, LLC, 892 S.E.2d at 723. Accordingly, the Court applies Tennessee law.

### B. Plaintiff Adequately Alleges a Knowing or Willful Violation of the TCPA.

Plaintiff proceeds under the TCPA claim, Count III of the amended complaint, because the TCPA authorizes actual and treble

damages as well as attorneys' fees and costs. See Dkt. No. 64; Tenn. Code § 47-18-109.

"In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" Tucker, 180 S.W.3d at 115 (quoting Tenn. Code § 47-18-109(a)(1)). "The defendant's conduct need not be willful or even knowing, but if it is, the TCPA permits the trial court to award treble damages." Id.; see also Dkt. No. 19 ¶ 40 (seeking treble damages). Plaintiff posits that Defendants violated the TCPA in two ways.

First, Plaintiff argues that Defendants' misrepresentations are actionable generally as "unfair or deceptive" acts or practices under the TCPA. Dkt. No. 32 at 21. Second, Plaintiff alleges Defendants violated the TCPA subsection that makes "[c]ausing confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction" an unfair or deceptive practice. Dkt. No. 19 ¶ 39 (citing Tenn. Code § 47-18-104(b)(14)).[6]

---

[6] The TCPA applies to this case because "[t]he Act is applicable to real estate transactions between consumers and sellers engaged in the business of selling real property." Reed v. Wally Conard Constr., No. 03A01-9807-CH-00210, 1999 WL 817528, at *3 (Tenn. Ct.

Plaintiff must also show the violation was willful or knowing for the Court to award treble damages. Tucker, 180 S.W.3d at 115. The TCPA defines "knowing" as having "actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have had reason to know of the falsity or deception." Tenn. Code § 47-18-103(15). "The TCPA does not define 'willful,' but courts have construed it to mean 'intentional.'" Mills v. Partin, No. M2008-00136-COA-R3-CV, 2008 WL 4809135, at *7 (Tenn. Ct. App. Nov. 4, 2008) (citation omitted). "A willful act is a conscious, voluntary act that occurs by way of design and not necessarily by malice." Baggett v. Crown Auto. Grp., Inc., APP. No. 01-A-01-9110-CV-00401, 1992 WL 108710, at *13 (Tenn. Ct. App. May 22, 1992) (citation omitted) (holding that deliberately altering the terms of the transaction without the knowledge of the other party is a willful act under the TCPA).

Plaintiff adequately alleges a TCPA violation. First, the amended complaint establishes that Defendants affirmatively misrepresented their ability to sell the property by executing the Agreement. See Dkt. Nos. 19 at 13 (Agreement stating "Seller [C

---

App. Oct. 13, 1999) (citing Ganzevoort v. Russell, 949 S.W.2d 293, 297-98 (Tenn. 1997)). Business entities, like Plaintiff, "have standing to bring a private cause of action" under the TCPA. ATS Se., Inc. v. Carrier Corp., 18 S.W.3d 626, 630 (Tenn. 2000) (citing Tenn. Code § 47-18-103(7), 109(a)).

and C] guarantee[s] that the Property is . . . able to be conveyed"), 32-2, 64. By the explicit terms of the Agreement, Defendant C and C "guarantee[d]" the "ability of [the] property to be sold" and, thus, held itself out as having the authority to sell. Dkt. No. 19 at 13. The ability to sell the property, or lack thereof, undoubtedly goes to the authority of C and C and its agents to negotiate the terms of an Agreement organizing an Event Sale. See Tenn. Code § 47-18-104(b)(14).

Although C and C is the guarantor of the ability to sell, the amended complaint likewise supports liability for the individual Defendants. Dkt. No. 19. The Agreement attached to the amended complaint shows Defendants Marshall and Galloway's signatures. Id. at 16. First, Defendant Marshall executed the Agreement as "Owner/Self." Dkt. No. 32-1 at 8 (fully executed version of Agreement). According to the amended complaint, Defendant "Marshall represented to Transcendent that C and C was the owner or receiver of an option to purchase the Property." Dkt. No. 19 ¶ 11. In support of its motions, Plaintiff submits an affidavit from its owner and manager detailing Defendant Marshall's participation in the negotiations and execution of the Agreement. Dkt. No. 32-2 ¶ 5. Plaintiff attaches negotiation emails which Defendant Marshall either authored or received by copy. Id. at 12-17. In these emails, Defendant Marshall writes "let's go sell 64

lots in Brunswick" in the emails leading up to the execution of the Agreement. Id. at 14.

Second, Defendant Galloway executed the Agreement as the "Managing Member" of the LLC. Dkt. No. 32-1 at 8. The amended complaint alleges that, during negotiations, Defendant Galloway "represented to Transcendent that C and C was the owner or receiver of an option to purchase the Property." Dkt. No. 19 ¶ 11. In November 2022, Defendant Galloway initiated the negotiations and represented that Defendant Galloway, his father, and his brother were purchasing sixty-four lots in Liberty Harbor. Dkt. No. 32-2 at 8. In support of its motion, Plaintiff also attaches emails documenting the meetings and negotiations leading up to the execution of the Agreement, which Defendant Galloway either authored or received by copy. Id. at 8–17.

Further, Plaintiff sufficiently pleads that Defendants' conduct, misrepresenting the authority to sell until just a few days before the Event Sale, caused Plaintiff to incur costs that could not be recouped. Dkt. No. 19 ¶¶ 14, 21. The amended complaint alleges that the Event Sale contemplated by the Agreement did not occur. Id. ¶¶ 16, 21. Plaintiff also attaches the cease-and-desist letter, dated March 9, 2023, demanding the cancellation of the sale. Id. at 22. These allegations satisfy the causation element, connecting Defendants' unfair or deceptive acts to the cancellation of the Event Sale. See Tucker, 180 S.W.3d at 115 (The

TCPA requires that "the plaintiff must prove . . . that the defendant's conduct caused" plaintiff's loss.).

Finally, according to the amended complaint, Defendants acted "knowingly." Dkt. No. 19 ¶ 31; see also id. ¶ 47 (Defendants "knew, or must have known, that they lacked proper authority to sell the Property and engage with Transcendent for its services associated with the sale of the Property."). The attached Agreement shows that Defendants voluntarily represented to Plaintiff the ability to sell the property. Id. at 13. The attached cease and desist letter shows that Defendants did not hold "any ownership interest whatsoever" in the property. Id. at 22. The attached letter also supports a knowing violation because it states that Defendants were notified "earlier" than Plaintiff and did not notify Plaintiff. Id. at 22-23.

The well-pled allegations show that "a reasonable person would have known or would have had reason to know of the falsity or deception" because Defendants engaged Plaintiff to market the property and plan for the Event Sale—relying on the "Ability of Property to be Sold" clause of the Agreement—all while Defendants lacked any ownership interest or authority to sell. See Tenn. Code § 47-18-103(15); Dkt. No. 19 at 13.

In conclusion, the facts as alleged show that Defendants Galloway and Marshall actively participated in the negotiations, execution of the Agreement, and misrepresentation that their

company, Defendant C and C, had the authority to sell the property. Thus, Plaintiff states plausible TCPA claims against Defendant C and C as the guarantor of the ability of the property to be sold under the Agreement and Defendants Galloway and Marshall for their own acts or conduct.[7] The amended complaint also sufficiently states a knowing and willful violation because Defendants knowingly and voluntarily entered in the Agreement premised on Defendants' affirmative representation that they had the ability and authority to sell the property. Dkt. No. 19 at 13. Thus, Plaintiff adequately alleges that Defendants misrepresented their property interest and caused "confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction." See Tenn. Code § 47-18-104(b)(14). The Court finds a knowing and willful

---

[7] Under Tennessee law, "a member, holder of financial interest, governor, manager, employee or other agent [of an LLC] may become personally liable in contract, tort or otherwise by reason of such person's own acts or conduct." Tenn. Code § 48-217-101(a)(3). Where a defendant executes the agreement and makes the statements underlying the TCPA violation, courts have allowed a claim for personal liability. See McCoy v. E. Tenn. Luxury Coach, LLC, No. 24-CV-94, 2024 WL 4916367, at *9 (E.D. Tenn. Nov. 6, 2024) (allowing for personal liability in an action for breach of contract, fraud and fraudulent inducement, negligent misrepresentation, conversion, and TCPA violations); Sugarlips Bakery v. A&G Franchising, No. 20-cv-00830, 2022 WL 210135, at *10 (M.D. Tenn. Jan. 24, 2022) (allowing for personal liability in breach of contract action) ("The corporate form may shield such individuals from liability for the debts of their organization, but it does not give them license to commit fraud themselves and then defeat liability with a defense of 'the corporation did it.'").

violation of the TCPA.

**C. There is a Legitimate Basis for Damages.**

Plaintiff seeks actual damages of $450,853.93, treble damages providing for a multiplier of three, prejudgment interest, and attorneys' fees. Dkt. Nos. 19 at 11, 64 at Ex. 3. Even when a defendant is in default, a "court has an obligation to assure that there is a legitimate basis for any damage award it enters, and to assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond." Anheuser Busch. Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). "Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985) (internal quotation marks and citation omitted).

**1. Actual Damages**

First, the TCPA allows Plaintiff to recover the "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated" caused by Defendants' unfair and deceptive acts. Tucker, 180 S.W.3d at 115 (internal quotation marks and citation omitted). According to the amended complaint, Plaintiff "incurred expenses for e-mail designs, mailing, signs, shirts contracts, food, tents, travel and other expenses" to prepare for the Event Sale prior to

its cancellation. Dkt. No. 19 ¶ 13. The amended complaint further states that the cancellation of the Event Sale caused "additional expenses to cancel appointments, re-stocking fees, etc." Id. ¶ 17. In the amended complaint, Plaintiff estimated these expenses to be approximately $600,000. Id. ¶ 18.

In support of its motion, Plaintiff substantiates the basis for award both "via a hearing [and] a demonstration by detailed affidavits establishing the necessary facts." Adolph Coors Co., 777 F.2d at 1544 (internal quotation marks and citation omitted). Plaintiff submitted an affidavit from its owner and single-member manager showing its expenses pursuant to the Event Sale and supplemented this affidavit with sworn testimony at the hearing on this motion. Dkt. Nos. 32-2 at 19, 64, Ex. 3. The Court finds that the amended complaint, now supplemented by the record, demonstrate that the $450,853.93 damages figure accurately reflects the ascertainable loss that Plaintiff incurred due to Defendants' unfair and deceptive acts. Dkt. No. 64. The Court finds that there is a legitimate basis for the damages alleged in the amended complaint because Plaintiff provided its receipts for vendors and travel expenses, its credit card statements for social media marketing contracts, and its check stubs for employees. Id. These losses resulted from Defendants' misrepresentations and creation of misunderstanding and confusion regarding the authority to sell, resulting in the last-minute cancellation of the Event Sale. Dkt.

23

Nos. 19, 64.

### 2. Treble Damages

Second, Plaintiff seeks treble damages under the TCPA and requests $1,352,561.79. Dkt. No. 64, Ex. 3 (three times the actual damages of $450,853.93). The TCPA provides:

> If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper, except that the court may not award exemplary or punitive damages for the same unfair or deceptive practice. In determining whether treble damages should be awarded, the trial court may consider, among other things: (A) The competence of the consumer or other person; (B) The nature of the deception or coercion practiced upon the consumer or other person; (C) The damage to the consumer or other person; and (D) The good faith of the person found to have violated this part.

Tenn. Code § 47-18-109(a)(3-4) (internal headings omitted). Because the Court finds that the TCPA violation was knowing or willful, treble damages are awardable. See supra Section II.B.

The four factors weigh in favor of an award of treble damages. The first factor—that Plaintiff is a competent real estate marketing firm—is the only factor that weighs against Plaintiff. Second, the amended complaint outlines the mendacious nature of the deception here: (1) the authority to sell was affirmatively misrepresented in the Agreement; (2) Defendants allowed Plaintiff to incur expenses, book vendors, and prepare for the Event Sale until just a few days before the sale; and (3) Defendants never

possessed the authority to sell. Dkt. No. 19 ¶¶ 13, 16–18. This deception caused Plaintiff to expend resources and incur costs that it was not able to recoup, amounting to over $450,000 in sunk costs—relevant to the third factor. Id. Fourth, and finally, there is no indicia of bad faith on the part of Plaintiff. Thus, the Court finds that treble damages are appropriate here. See Martin v. Performance Boat Brokerage.Com, LLC, No. 11-1204, 2012 WL 2194687, at *1 (W.D. Tenn. June 14, 2012) (awarding treble damages in a default judgment action).

### 3. Prejudgment Interest

Third, Plaintiff seeks prejudgment interest. Dkt. No. 63. Prejudgment interest "compensate[s] the wronged party for the loss of the use of the money it should have received earlier." Scholz v. S.B. Int'l, Inc., 40 S.W.3d 78, 82 (Tenn. Ct. App. 2000).

Under Tennessee law, prejudgment interest is awardable at the Court's discretion, but is not mandatory, in TCPA actions. Gary R. Prince Revocable Tr. v. Blackwell, 735 F. Supp. 2d 804, 813 (M.D. Tenn. 2010) (An award of prejudgment interest is a "matter[] of discretion under the TCPA." (citing Gaston v. Tenn. Farmers Mut. Ins. Co., No. E2006-01103-COA-R3-CV, 2007 WL 1775967, at *6 (Tenn. Ct. App. June 21, 2007))); see also Aguilar v. Eads Auto Sales, No. W2023-00914-COA-R3-CV, 2024 WL 3101717, at *1 (Tenn. Ct. App. June 24, 2024); Systematic Power Sols., LLC v. Fullriver Battery Mfr. Co., Ltd., No. 3:19-CV-277-KAC-DCP, 2023 WL 5938187, at *1-2

(E.D. Tenn. Sep. 12, 2023).[8] Tennessee Code § 47-14-123 provides:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum.

Tennessee courts "favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds." Scholz, 40 S.W.3d at 83 ("Fairness will, *in almost all cases*, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received." (emphasis added) (citations omitted)); see also Stamtec, Inc. v. Anson Stamping Co., LLC, 346 F.3d 651, 660 (6th Cir. 2003) (The Tennessee Supreme Court observes a "presumption in favor of granting prejudgment interest."). Nevertheless, "[p]rejudgment interest is not awarded as a matter of right." Wilson v. State Farm Fire & Cas. Co., 799 F. Supp. 2d 829, 844 (E.D. Tenn. 2011). "Rather, its allowance under Tennessee law is discretionary with the trial court." Id. (concluding that an award of prejudgment interest was inappropriate where the defendant was liable for breach but did not violate the TCPA).

---

[8] "State law governs the award of prejudgment interest in a diversity case." Alhassid v. Bank of Am., N.A., 688 F. App'x 753, 761 (11th Cir. 2017).

"Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998). "In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." Id. The Court weighs six equitable factors relevant to its decision to award prejudgment interest:

> (1) promptness in the commencement of a claim, (2) unreasonable delay of the proceedings by either party, (3) abusive litigation practices by either party, (4) the certainty of the existence of an underlying obligation, [(5)] the certainty of the amount in dispute, and [(6)] prior compensation for the lost time value of the plaintiff's money.

Poole v. Union Planters Bank, N.A., 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010).

Here, Plaintiff seeks "prejudgment interest at the rate of ten percent (10%) per annum, running from March 8, 2023 [the date the Event Sale was canceled] until the date the judgment is entered against Defendants, jointly and severally." Dkt. No. 63 at 5. In weighing the six factors, the Court finds that prejudgment interest is appropriate.

First, Plaintiff brought this action on October 31, 2023, approximately seven months after the ruination of the Event Sale. Dkt. No. 1. Second, there is no evidence of unreasonable delay on

27

Plaintiff's behalf. Instead, in the seven months before filing suit, Plaintiff attempted to mitigate its damages and resolve the dispute amicably. Dkt. No. 32-2 at 24. After filing suit, Plaintiff kept the Court apprised of the difficulties in effectuating proper service on Defendants. See Dkt. Nos. 46, 47 at 1 ("Transcendent has tried to personally serve Defendant Galloway seven times across two states, South Carolina and Illinois."), at 4 (Defendant Galloway stated that he lived at a particular address, but the process server found that property "vacant" with "broken windows."). Third, Plaintiff has not engaged in any abusive litigation practices. Fourth, the Court finds the existence of the obligation certain because the obligation arises from the Agreement, which on its face guaranteed the ability of the property to be sold. Dkt. No. 19 at 13. The Agreement also included a liquidated damages provision requiring Defendants to repay Plaintiff's advanced marketing capital if Defendants cancelled the Event Sale; this provision contemplates that Plaintiff would suffer irrecoverable losses if the Event Sale was cancelled. Id. at 17. Fifth, the Court finds the amount in dispute sufficiently certain. The TCPA requires a finding of "ascertainable" loss, which Plaintiff adequately supports through its complaint, affidavit, and the hearing testimony—given the posture of default judgment. Tucker, 180 S.W.3d at 115; Dkt. Nos. 19 ¶¶ 13, 17, 32-2 at 19, 64, Ex. 3; see also supra Section II.C.1. Sixth, Plaintiff has not

recovered any of its losses or received any compensation from Defendants. <u>See</u> Dkt. No. 32-2 at 21-27 (Defendant Galloway representing that he will divert commissions from real estate closings to Plaintiff), 64 (hearing testimony that Plaintiff never received any compensation for its losses).

Thus, the Court finds that "the award of prejudgment interest is fair, given the particular circumstances of the case." <u>Myint</u>, 970 S.W.2d at 927. Particularly, the Court finds Plaintiff would have had the proceeds from the Event Sale or the repaid funds for Plaintiff's advanced capital pursuant to the Agreement but for Defendants' unfair and deceptive acts. <u>See</u> Dkt. No. 19 at 17. Prejudgment interest is equitable in this case.

Plaintiff's motion for prejudgment interest is **GRANTED** because an award of prejudgment interest in the maximum allowable rate will "fully compensate [Plaintiff] for the loss of the use of funds to which [it] was legally entitled." <u>Myint</u>, 970 S.W.2d at 927; <u>Scholz</u>, 40 S.W.3d at 83. Accordingly, the Court awards prejudgment interest at a rate of ten percent (10%) per annum on the TCPA actual damages of $450,853.93 from March 8, 2023 to the entry of judgment, in the amount of $89,800.22.[9]

---

[9] The Court uses the actual damages amount, rather than treble damages amount, because prejudgment interest must not be awarded to penalize or punish a defendant. <u>Myint</u>, 970 S.W.2d at 927. As such, the Court considers that the TCPA's "allowance for treble damages is intended to be punitive rather than compensatory," and declines to use the treble damages as the underlying damages amount

**4. Attorneys' Fees**

Finally, Plaintiff seeks attorneys' fees and litigation costs under the TCPA.[10] Dkt. Nos. 19 ¶ 53, 62. "Upon a finding by the court that a provision of [the TCPA] has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs." Tenn. Code § 47-18-109(e)(1); see also Martin v. Performance Boat Brokerage.com, No. 11-1204, 2012 WL 2194703, at *2 (W.D. Tenn. May 25, 2012) ("Default judgments for claims under the TCPA may include treble damages and attorney fees, as these are statutorily granted remedies under the Act."). The Court finds that the TCPA violation warrants an award of attorneys' fees.[11]

---

for prejudgment interest. Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 907 (Tenn. 1999) (citations omitted); see also Blosser v. Johnson, No. W2017-00858-COA-R3-CV, 2018 WL 2447037, at *3 (Tenn. Ct. App. May 31, 2018) ("Like punitive damages, treble damages [under the TCPA] are not intended to compensate an injured plaintiff but rather to punish the defendant and to deter similar conduct in the future." (citation omitted)). To the extent Plaintiff requests the Court base the award of prejudgment interest on the treble damages amount, dkt. no. 63 at 5, the motion is **DENIED**.

[10] The Court evaluates the availability of fees under Tennessee law. See Columbus Mills, Inc. v. Freeland, 918 F.2d 1575, 1577 (11th Cir. 1990) (In diversity cases, state law "controls . . . the availability of attorneys' fees.").

[11] In accordance with Local Rule 54.2, the Court **ORDERS** Plaintiff's Tennessee-based counsel to "file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation" within thirty (30) days after entry of this final judgment. S.D. Ga. L.R. 54.2(c) ("Within 30 days (or such other period as the Court may prescribe) after entry of the final judgment, the movant shall file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation."); see also Dkt. No. 62 at 9 n.3 ("Transcendent's

**CONCLUSION**

Because there is a "sufficient basis in the pleadings" for Plaintiff's claims, default judgment is warranted. <u>Surtain</u>, 789 F.3d at 1245. Plaintiff's motions for default judgment, dkt. nos. 32, 55, 61, are **GRANTED**. Further, Plaintiff's motion for prejudgment interest on actual damages, dkt. no. 63, is **GRANTED**. Accordingly, a default judgment is entered against Defendants C and C Property Investments, LLC, Cory Galloway, and Charles Marshall in the amount of $1,442,362.01, inclusive of prejudgment interest. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff and close this case. The Court **DEFERS** ruling on Plaintiff's motion for attorneys' fees, dkt. no. 62, pending the submission of Plaintiff's Tennessee-based counsel's affidavit supporting fees and costs.

**SO ORDERED**, this 4th day of March, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

Tennessee-based counsel, Matthew Grossman of Frantz, McConnell & Seymore, will supplement with his own Affidavit of Attorneys' Fees and Expenses."). Thereafter, the Court will, in a separate order, "articulate the decisions it made, give principled reasons for those decisions, and show its calculation" of attorneys' fees. <u>Norman v. Hous. Auth. of Montgomery</u>, 836 F.2d 1292, 1304 (11th Cir. 1988).